## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

TIWAN TONY WILSON,           *

      **Plaintiff,**           *

**v.**                        *        **Civil Action No. PWG-13-3539**

**WEXFORD HEALTH SOURCES, INC.,**    *

      **Defendant.**          *
                         ***

### MEMORANDUM

Plaintiff filed a complaint, alleging that he was receiving inadequate medical care in prison, ECF No. 1, and he filed a letter request for injunctive relief, specifically that Defendant send him to a hospital for further evaluation, ECF No. 7.  I ordered Defendant to show cause why I should not grant Plaintiff the injunctive relief he requested.  ECF No. 9.  Pending is Defendant's response to my show cause order, filed together with its motion for summary judgment, ECF 10.[1]  Plaintiff opposes the motion, ECF 15.  Upon review of the pleadings filed, I find a hearing in this matter unnecessary. *See* Loc. R. 105.6 (D. Md. 2011).  For the following reasons, I will grant Defendant's motion and deny Plaintiff's request for injunctive relief.

### I.  BACKGROUND

Plaintiff, an inmate confined at Eastern Correctional Institution ("ECI"), alleges that he has been coughing up blood since January 25, 2013.  Initially, Plaintiff was told he was coughing

---

[1] Also pending is Plaintiff's motion to appoint counsel, ECF No. 6.  A federal district court's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and may be considered where an indigent claimant presents exceptional circumstances.  *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982).  Upon careful consideration of the motions and previous filings by Plaintiff, I find that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so.  No hearing is necessary to the disposition of this case and there are no exceptional circumstances that would warrant the appointment of an attorney to represent Plaintiff under § 1915(e)(1).  Thus, the motion shall be denied.

up blood due to scar tissue from being shot and stabbed, but Plaintiff states he was never shot or stabbed in his chest.  Rather, he was shot in his stomach in 2001 and stabbed in his shoulder in 2005.  Plaintiff claims that, despite submitting sick call requests to prison medical staff, he has not been given a proper diagnosis.  He states that the only treatment he has received consists of ineffective medications and treatment for asthma, allergies, and a cough.  He also states that he has been provided medication to slow his heart rate, but believes that his heart palpitations are due to pain and shortness of breath.  He alleges that doctors have been denying him a CT scan and that he has been placed on suicide watch because he is so worried about his health.  According to Plaintiff, even though he has shown medical staff the blood he is coughing up, he still is denied testing at an outside hospital.  Compl. 3, 5–7, ECF No. 1.  In his opinion, the blood either is from cancer, *id.* at 5–7, or metal inside his chest, *id.* at 3.

In correspondence later filed with the Court, Plaintiff indicates that he was sent to a hospital for testing.  Second Supp. 2, ECF No. 15.  Additionally, he states that he reported to the infirmary for a sick call slip and the nurse listened to his breathing, but could not hear any sounds on one side of his chest.  Plaintiff told medical staff at that time that he was in constant pain, that he continued to cough up blood, and that his lips were breaking out.  In response to his statement regarding his lips, he claims Nurse Teri Davis remarked "in so many words" that the condition of his lips was due to Plaintiff performing fellatio.  Plaintiff claims that Dr. Ashraf reported to the room and Plaintiff coughed up blood in the doctor's presence.  Dr. Ashraf provided Plaintiff with pain medication, ordered more "cough pills," and told Plaintiff his symptoms were due to the presence of metal in his chest.  Plaintiff further claims that medical staff told him he was not a high priority and that he is treated as a troublemaker.  Ltr. Req. for Injunctive Relief.

Due to the serious nature of Plaintiff's claims, I ordered Defendant to show cause why injunctive relief should not be granted, ECF No. 9. Defendant states that Plaintiff has a medical history which includes hypertension, diabetes, paranoid schizophrenia, depression, and chest and abdominal trauma from multiple gunshot and stab wounds.[2] Chem Aff. ¶¶ 5–6, Def.'s Mem. Ex. 2, ECF No. 10-4. Diagnostic imaging of Plaintiff's chest has revealed traumatic changes that are consistent with both injury and prior surgeries including surgical clips in the right lower lung, fibrotic changes in the mid-to-lower lung zones, decreased aeration of the right lung, and deformities of the ribs. *Id*. ¶¶ 6–8. Plaintiff's medical history also includes chronic chest pain unrelated to cardiac or respiratory/pulmonary problems. *Id.* ¶ 6. This history includes hemoptysis (coughing up blood), shortness of breath, upper respiratory disease, pneumonia, and empyema of the lung.[3]

In adults, 70 to 90 percent of cases of hemoptysis are caused by bronchitis, bronchiectasis,[4] tuberculosis, or necrotizing pneumonia.[5] The condition may indicate a mild or serious condition including a blood clot in the lung, chronic lung conditions like bronchitis or bronchiectasis, pulmonary aspiration or breathing blood into the lungs, cystic fibrosis, cancer of

---

[2] Despite some references to mental health issues, nothing in Plaintiff's filings or the voluminous medical records suggests a concern about Plaintiff's competence requiring action pursuant to Fed. R. Civ. P. 17(c)(2).

[3] Empyema is a condition in which pus and fluid from infected tissue collects in a body cavity and most often refers to collections of pus in the space around the lungs. It is frequently a complication of pneumonia. Def.'s Mem. 3 n.3.

[4] Bronchiectasis is a condition in which damage to the airways causes them to widen and become flabby and scarred; the damage is usually caused by an infection that injures the walls of the airways or prevents the airways from clearing mucus. The condition causes the airways to slowly lose their ability to clear out mucus which can lead to repeated lung infections. Treatment for the condition includes antibiotics, bronchodilators, expectorants (cough medicine), and mucus-thinning medication. *See* https://www.nhlbi.nih.gov/health/health-topics/topics/brn/.

[5] Hemoptysis, *Merck Sharp & Dohme Corp.* (Nov. 2013), http://www.merckmanuals.com/professional/pulmonary_disorders/symptoms_of_pulmonary_dis orders/hemoptysis.html.

the respiratory tract, vasculitis or inflammation of the blood vessels of the lungs, injury to arteries of the lungs, bronchoscopy due to injury to the air passages, pneumonia or other infections of the lung, pulmonary edema, tuberculosis, or systemic lupus erthematosus.[6] Treatment for the condition includes treatment for the underlying cause, and if it is due to irritation of the throat, cough suppressant syrup can be used.  *Id*.  In Plaintiff's case, the initial suspicion confirmed by diagnostic imaging was that his condition was caused by the multiple traumas he experienced, which included five surgeries to address injuries caused by a gunshot wound and a stab wound.  One of those surgeries included a splenectomy.  EPHR Recs. 329, Def.'s Mem. Ex. 1, ECF No. 10-3.

Defendant has provided in excess of 300 pages of medical records in support of its motion for summary judgment.  *See id.*  Significant to the issue pending before the Court is a consultation report dated November 15, 2013, indicating that Plaintiff had been sent to Bon Secours Hospital for a pulmonary consultation and received a CT scan "a few weeks ago" which showed "lung mass suspicious of lung tumor for which pulmonary consult wants to do Bronchoscopy test." *Id.* at 336; *see id.* at 248 (indicating that Bon Secours pulmonary consultant requested: pulmonary function test done at Bon Secours; chest x-ray done at the prison; pre-admission blood work; and bronchoscopy).  A summary of a CT scan done on September 12, 2013

> showed extensive pleural and parenchymal change in the posterior right lower lung associated with multiple rib deformities apparently related to the previous trauma from a stab wound and lung collapse [according] to the previous history. Extensive scarring in the posterior right lower lobe with a small pleural-based

---

[6] Hemoptysis, *mDhil* (June 1, 2012), http://www.mdhil.com/hemoptysis ("The quantity [of blood] may vary with a small amount due to throat irritation or a large amount in case of cancer.").

air cavity, which appears to have fistulous collection in the lower bronchus, previous gunshot wound to the left upper quadrant, splenectomy.

*Id*. at 330. Another summary of the same CT scan dated October 14, 2013, indicates a small metallic fragment was seen in the lung tissue as well as a deformity to the left diaphragm consistent with the history of previous trauma.   *Id*. at 238.  Medical providers acknowledged Plaintiff's weight loss, but noted that in the year prior Plaintiff had gained 30 pounds.  *Id.* at 78.

It appears the request for the CT scan was generated on March 28, 2013, six months before the test was conducted.  At that time, it was noted that Plaintiff was complaining of intermittent hemoptysis and there was a need to rule out bronchiectasis or pulmonary disease following his admittance to the prison infirmary.  *Id*. at 112, 327.  A chest x-ray taken two months prior to the request for a CT scan on January 28, 2013, revealed "post-traumatic changes."  *Id*. at 323.  On May 7, 2013, when Plaintiff was seen by Dr. Ashraf, it was noted that there were no signs or symptoms of hemoptysis or shortness of breath, prompting Ashraf to delay the CT scan.  *Id*. at 128.

The bronchoscopy test requested by the Bon Secours pulmonary clinic was done on December 4, 2013.  Those test results indicate that plaintiff has "a mild restrictive lung defect" with "mild decrease in diffusing capacity" which is interpreted as an "insignificant response to bronchodilator."  *Id*. at 341.  Plaintiff was given another bronchoscopy on February 7, 2014, which ruled out any presence of a tumor or other lesion.  Operative Report 1–2, Def.'s Supp. Ex. 1, ECF No. 12-1.  There was evidence of bronchiectasis with acute inflammation of the inner walls of Plaintiff's lungs; the surgeon noted that there was "splinter hemorrhages" when touched but that Plaintiff was not actively bleeding in his lungs.  *Id*. at 1.  The current plan of treatment for Plaintiff is stated in Dr. Jason Clem's affidavit as follows:

The treatment for bronchiectasis is aimed at controlling infections and bronchial secretions, relieving airway obstruction, and preventing complications. Based on these findings . . . plaintiff is presently receiving appropriate care for his pulmonary conditions which includes Symbicort a corticosteroid inhaler used to reduce inflammation of the lung, Guaifenesin an expectorant to thin and loosen mucus production and chest congestion and cough tabs.

Plaintiff will continue to be regularly followed for his pulmonary issues as a chronic care patient to monitor his condition and the effectiveness of his treatment plan in controlling his symptoms associated with his bronchiectasis, bronchitis and recurrent hemoptysis.

Chem Supp. Aff. ¶¶ 6–7, Def.'s Supp. Ex. 2, ECF No. 12-2.

## II.   ANALYSIS

### A.  Injunctive Relief

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren*, 553 U.S. 674, 689–90 (2008). To obtain a preliminary injunction, a movant must demonstrate: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; and 4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 19 (2008); *The Real Truth About Obama, Inc. v. Federal Election Commission*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089 (2010), *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam). The evidence submitted by Defendant indicates that Plaintiff has received extensive testing and there is no objective evidence that his condition is caused by lung cancer. The injunctive relief sought—appropriate medical care—is being provided. While Plaintiff's concern is reasonable and understandable, his insistence that his symptoms are not being taken seriously are belied by the objective evidence produced by Defendant.

**B. Eighth Amendment Claim**

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to "deliberate indifference" to a "serious medical need[]." *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner-plaintiff was suffering from a serious

medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *See Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F. 3d 383, 390 (4th Cir. 2000) (citing *Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken))).

Plaintiff's condition is objectively serious; however, the evidence presented establishes that medical providers are not recklessly refusing to assess and treat his condition. Plaintiff's disagreement with the diagnosis or the manner in which the diagnosis was made is not a basis for an Eighth Amendment claim. The fact that Plaintiff's request for a full body scan at an outside

hospital is not approved simply does not reflect deliberate indifference on the part of Defendant. The delays that have occurred were medically-based decisions and do not appear to have resulted in harm to Plaintiff.   To the extent that some of Plaintiff's complaints have gone unaddressed, "an inadvertent failure to provide adequate medical care does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105.  Plaintiff's grievances with the medical decisions made regarding what tests and treatments are necessary in light of the symptoms presented are reflective of his frustration, but "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).   There are no exceptional circumstances alleged in this case.  Based upon the undisputed, objective evidence in the record, Defendant is entitled to summary judgment in its favor.

In granting summary judgment, I do not suggest that Plaintiff is not entitled to medical treatment for his serious condition.  Yet, that right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977) (emphasis added).  The record evidence indicates that Plaintiff's requests are considered, his needs are addressed, and he is encouraged by medical staff to keep them informed of any further episodes or serious symptoms.

A separate order follows.


May 14, 2014                                          /S/
Date                                              Paul W. Grimm
                                                  United States District Judge


9